James R. MANTEUFFEL, Appellant,

v.

CITY OF NORTH ST. PAUL, Respondent.

No. C5-97-696.

Court of Appeals of Minnesota.

Nov. 18, 1997.

Brian C. Southwell, Minneapolis, for Appellant.

David Hoekstra, Jardine, Logan & O'Brien, P.L.L.P., St. Paul, for Respondent.

Considered and decided by NORTON, P.J., TOUSSAINT, C.J., and WILLIS, J.

## OPINION

WILLIS, Judge.

James Manteuffel appeals from the district court's dismissal of his claim under the Minnesota Government Data Practices Act as barred by a two-year statute of limitations. We find that the six-year limitation for liabilities created by statute governs data practices act claims and therefore reverse.

## FACTS

The City of North St. Paul terminated the employment of appellant James Manteuffel, a probationary police officer, on May 7, 1990. After Manteuffel's union informed him that it would not pursue his grievance, Manteuffel sent a certified letter, dated June 20, 1990, to Police Chief Richard Sapp, requesting a copy of his personnel file for use in seeking employment with other police departments. Sapp did not respond. Manteuffel alleges that between July 9 and October 12, 1990, he made sixteen attempts by telephone, meeting, and certified letter to contact Sapp and obtain access to his file. On the four occasions on which Sapp and Manteuffel spoke, Sapp twice refused Manteuffel access, once allowed him to view parts of the file with no copying, and once told him that his request was "on the back burner."

Manteuffel eventually hired an attorney, who contacted Sapp on January 23, 1991. Following further discussion, Sapp finally allowed Manteuffel access to his file on March 4, 1991. On October 9, 1992, Manteuffel commenced a suit against the city pursuant to Minn.Stat. § 13.08, subd. 1 (1996), for violation of the data practices act,[1] apparent-

---

1. Minn.Stat. § 13.08, subd. 1, creates the right to a civil action for damages against any entity that violates a provision of the data practices act. Manteuffel's suit is based on a violation of Minn.

ly anticipating the trial court's denial of his motion to add a data practices act claim to his pending lawsuit challenging the termination.[2]

After the court set an August 1996 trial date for the data practices act suit, the city filed a motion to dismiss the action as time-barred. The data practices act does not specify a limitation period, and Minnesota courts have not previously addressed the issue. The city argued that Manteuffel's claim falls under the two-year statute of limitations provided either by Minn.Stat. § 541.07(1) (1996), which includes actions "for libel, slander, assault, battery, false imprisonment, or other tort, resulting in personal injury * * *," or by Minn.Stat. § 541.07(5) (1996), which governs actions

> for the recovery of wages or overtime or damages, fees or penalties accruing under any federal or state law respecting the payment of wages or overtime or damages, fees or penalties * * *.

In response, Manteuffel argued that his claim was governed by Minn.Stat. § 541.05, subd. 1(5) (1996), which provides a six-year statute of limitations "for any other injury to the person or rights of another, not arising on contract, and not hereinafter enumerated," or that in the alternative, that the limitation period was tolled until March 1991 under the "continuing violation" doctrine. At oral argument on appeal, counsel for both parties stated that they had not considered Minn. Stat. § 541.05, subd. 1(2) (1996), which sets a six-year limitation period for a claim on "a liability created by statute, other than those arising upon a penalty or forfeiture or where a shorter period is provided by section 541.07."

The court dismissed Manteuffel's data practices act action with prejudice. The

Stat. § 13.04, subd. 3 (1996), which grants individuals a right to examine any non-confidential data of which they are the subjects.

**2.** Manteuffel, who alleged that he had been fired for questioning an officer's use of excessive force, originally sued under the so-called whistleblower act in May 1991. The court denied Manteuffel's motion to add a data practices act claim on October 13, 1992, four days after Manteuffel filed the complaint in the instant case, and later denied his motion to consolidate the two cases. This court reversed two district court dismissals

court wrote no memorandum, and the only substantive portion of the order stated,

> [u]pon determination by the court that Plaintiff failed to commence this cause of action within the applicable limitation of actions, to wit: two (2) years, dismissal is requisite.

Manteuffel appeals the dismissal, and we reverse. Because we find the applicable statute of limitations to be six years, we need not address the "continuing violation" issue.

## ISSUE

For statute of limitations purposes, is a data practices act claim (a) a wage claim governed by Minn.Stat. § 541.07(5); (b) a tort "resulting in personal injury" within the meaning of Minn.Stat. § 541.07(1); (c) a "liability created by statute" under Minn.Stat. § 541.05, subd. 1(2); or (d) an otherwise unenumerated "injury to the person or rights of another" under Minn.Stat. § 541.05, subd. 1(5)?

## ANALYSIS

■ The question of which statute of limitations to apply is one of law, which this court reviews de novo. *See Larson v. New Richland Care Ctr.*, 538 N.W.2d 915, 919 (Minn.App.1995), *review granted* (Minn. Dec. 20, 1995), *grant of review vacated* (Minn. Mar. 4, 1997).

### I. Wage claims—Minn. Stat. § 541.07(5)

■ Manteuffel's complaint seeks "compensatory damages" in a sum to be determined at trial, but does not specifically mention lost wages. In *McDaniel v. United Hardware Distrib. Co.*, 469 N.W.2d 84 (Minn. 1991), the Minnesota Supreme Court held that Minn.Stat. § 541.07(5) does not apply to a claim of retaliatory discharge for claiming

of the whistleblower act claim. *Manteuffel v. City of N. St. Paul*, 538 N.W.2d 727 (Minn.App. 1995), *on remand from* 533 N.W.2d 622 (Minn. 1995); *Manteuffel v. City of N. St. Paul*, No. C2–93–288, 1993 WL 267496 (Minn.App. July 20, 1993). Following trial, the jury found in favor of the city, and this court affirmed the district court's denial of Manteuffel's posttrial motions involving discovery and exclusion of evidence. *Manteuffel v. City of N. St. Paul*, No. C7–96–2245, 1997 WL 396231 (Minn.App. July 15, 1997), *review denied* (Minn. Sept. 4, 1997).

worker's compensation benefits under Minn. Stat. § 176.82, explaining:

> Workers' compensation benefits include all benefits provided under the Workers' Compensation Act on account of injury or death, of which wage loss is only one type. Moreover, not all claimants under section 176.82 will have lost wages.

*Id.* at 86 (citations omitted). Under *McDaniel*, therefore, section 541.07(5) applies only to cases where the nature of the cause of action necessarily gives rise to a claim of lost wages. *Cf. Portlance v. Golden Valley State Bank*, 405 N.W.2d 240 (Minn.1987) (applying § 541.07(5) to claim for breach of employment contract). Because claims for damages under the data practices act will not always include lost wages, they are not governed by the two-year limitation period for wage claims in section 541.07(5).

## II. Torts · involving personal injury— Minn. Stat. § 541.07(1)

In *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775 (1975), the Minnesota Supreme Court identified several factors for courts to consider in deciding whether a cause of action sufficiently resembles the five torts listed in section 541.07(1)—libel, slander, assault, battery, and false imprisonment—to be subject to the statute's two-year limitation on actions. *See id.* at 443–47, 234 N.W.2d at 791–92. In *Christenson v. Argonaut Ins. Cos.*, 380 N.W.2d 515 (Minn.App.1986), *review denied* (Minn. Mar. 27, 1986), this court restated the *Wild* formula as a three-part inquiry into whether an action (1) is an intentional or strict liability tort, (2) involves injury to the person, and (3) can generally be the basis of a criminal prosecution. *Id.* at 518. Using the *Christenson* test, this court in *Larson* applied section 541.07(1) to a claim created by statute, the whistleblower act. 538 N.W.2d at 920.

The city argues that *Larson* governs this case and that the two-year statute of limitations for torts involving personal injury therefore applies. But we believe that to apply section 541.07(1) here would extend its scope further than the language of the statute fairly supports.

The *Wild* court noted that assault, battery, and false imprisonment are intentional torts, while it described libel and slander as being "in the nature of strict liability." 302 Minn. at 446, 234 N.W.2d at 792. This characterization of libel and slander apparently results from the fact that a showing of intent is not necessary to establish a prima facie case; in libel, for example, liability will attach if a plaintiff demonstrates that the defendant published a false and defamatory statement about the plaintiff that resulted in damage, unless the defendant proves an affirmative defense, such as truth. *Diesen v. Hessburg*, 455 N.W.2d 446, 449 (Minn.1990).

Because the data practices act provides for exemplary damages "[i]n the case of a willful violation," Minn.Stat. § 13.08, subd. 1, violation of the statute cannot be an intentional tort, but must either amount to negligence or result in strict liability. The city argues that because section 13.08, subdivision 1, states that any entity violating the act "is liable" to a person who suffers damage as a result and does not specify either that the violation must be intentional or that it must be negligent, a violation of the data practices act is "in the nature of" a strict liability tort.[3]

Except for *Wild*, in which the court held that a claim for "interference with business relationships by means of defamation" amounts to a libel or slander claim for limitations purposes, *Wild*, 302 Minn. at 447, 234 N.W.2d at 793, every previous expansion of the scope of section 541.07(1) has involved an intentional tort. *See Christenson*, 380 N.W.2d at 518 (intentional infliction of emotional distress); *Krause v. Farber*, 379 N.W.2d 93, 97 (Minn.App.1985) (intentional misrepresentation), *review denied* (Minn. Feb. 14, 1986); *Bryant v. American Sur. Co.*, 69 Minn. 30, 30, 71 N.W. 826, 826 (1897) (malicious prosecution for crime); *see also Larson*, 538 N.W.2d at 920 (finding violation

---

3. Manteuffel cites *Demers v. City of Minneapolis*, 486 N.W.2d 828 (Minn.App.1992), for the proposition that the data practices act does not give rise to strict liability because a good faith belief that data are private or confidential constitutes a defense. But *Demers* involved a claim of a "willful" violation, where good faith was relevant to negating the alleged intent. *Id.* at 832. In any event, defenses related to good faith also apply in cases of libel and slander. *See, e.g., Bol v. Cole*, 561 N.W.2d 143, 149 (Minn.1997) (finding employer's statements protected where made in good faith on proper occasion with proper motive and reasonable cause).

of whistleblower act to be intentional tort). Application of section 541.07(1) here would be the first expansion of the list of torts "in the nature of strict liability" beyond actions involving defamation. Libel and slander have always been anomalies in the law of torts. *See* W. Page Keeton, et al., *Prosser and Keeton on Torts* § 111, at 771 (5th ed.1984). Notwithstanding this court's dictum in *Christenson*, we do not believe that the inclusion of libel and slander as subject to the two-year limitation in section 541.07(1) necessarily evinces a legislative intent to include all strict liability or quasi-strict liability torts within the scope of the statute.

Moreover, violation of a statute does not necessarily give rise to strict liability; it may also be categorized as negligence per se. *See, e.g., Boitz v. Preblich*, 405 N.W.2d 907, 912 (Minn.App.1987) (defining negligence per se as where statute imposes duty and damage proximately results from neglect of duty); *see also Bills v. Willow Run I Apartments*, 547 N.W.2d 693, 695 (Minn.1996) (finding violation of building code to be negligence per se, but imposing liability only if landlord knew or should have known of violation). Actions alleging personal injury grounded in negligence are generally subject to the six-year limitation of Minn.Stat. § 541.05, subd. 1(5). *American Mut. Liability Ins. Co. v. Reed Cleaners*, 265 Minn. 503, 506, 122 N.W.2d 178, 180 (1963). The city urges that we expand the list of torts "in the nature of strict liability" for purposes of section 541.07(1) to include some statutory liabilities where the degree of scienter required is not clear from the statute's language. We

decline to do so because courts would then be required to engage in extremely fine interpretation at an early stage of the proceeding merely to determine whether an action may be maintained. We find this unnecessary because the language of section 541.05, subd. 1(2), creating a separate limitation period for liabilities created by statute, provides a much less cumbersome method of resolving the issue.[4]

In addition, this is the first time this court has been asked to apply section 541.07(1) to a tort that may be committed only by a government entity, rather than by a private actor. *See Walker v. Scott County*, 518 N.W.2d 76, 78 (Minn.App.1994) (holding that data practices act does not impose liability on individuals, including county official acting outside scope of employment), *review denied* (Minn. Aug. 24, 1994). If, in applying the *Christenson* test, every statutory duty imposed on a government official is "in the nature of strict liability," and if a plaintiff alleges "personal injury" as a result of a breach,[5] the question of whether to apply section 541.07(1) or a six-year statute essentially turns on whether, as here, the legislature has provided a criminal penalty for a violation. *See* Minn.Stat. § 13.09 (1996) (providing that willful violation of data practices act is a misdemeanor). Again, we are not persuaded that merely because the legislature has provided criminal consequences for an official's breach of a statutory duty, it has indicated an intent to analogize the offense to libel and slander for statute of limitations purposes. *Cf.* Minn.Stat. § 10A.02, subd. 11(b) (1996) (providing that member's disclo-

---

4. We need not decide here whether section 541.07(1) might apply to a tort established as strict liability by case law or statutory language.

5. The term "personal injury" is itself problematic under the case law. The court in *Wild* held that personal injury extends beyond bodily injury to a "personal wrong." *Wild*, 234 N.W.2d at 791–93. The court borrowed the definition of "personal wrong" from the law of survivorship, indicating that the term does not include claims that are assignable or wrongs involving property that an estate could pursue after a plaintiff's death. *Id.* In general, claims for "special damages," such as lost wages, are survivable. *See* Minn.Stat. § 573.02, subd. 2 (1996); *see also Beaudry v. State Farm Mut. Auto. Ins. Co.*, 518 N.W.2d 11, 12 n. 1 (Minn.1994). However, in *Larson*, this

court held that a whistleblower act violation was "obviously a personal wrong" under *Wild. Larson*, 538 N.W.2d at 920; *cf.* Minn.Stat. § 181.935(a) (1996) (allowing employee injured under whistleblower act "any and all damages recoverable at law").

Moreover, the issue of whether a data practices act claim survives a plaintiff's death is also unsettled. *Compare* Minn.Stat. § 13.08, subd. 1 (authorizing civil remedies for a "representative of a decedent who suffers any damage as a result of the violation"), *with Estate of Benson by Benson v. Minnesota Bd. of Med. Practice*, 526 N.W.2d 634, 636 (Minn.App.1995) (claim of invasion of privacy through violation of act does not survive death). Because we hold section 541.07(1) inapplicable to data practices act claims for other reasons, we need not resolve these issues here.

sure of information relating to complaint to or investigation by Campaign Finance and Public Disclosure Board before release of public findings is a misdemeanor); Minn. Stat. § 12.45 (1996) (providing misdemeanor penalties for officials who violate duties imposed by emergency management laws). Because we do not believe that violations of duties statutorily imposed only on government officials are sufficiently similar to libel and slander to warrant application of section 541.07(1) by analogy, we conclude that claims under the data practices act are not subject to the two-year statute of limitations governing "tort[s] involving personal injury."

### III. Liability created by statute—Minn. Stat. § 541.05, subd. 1(2)

A cause of action is a "liability created by statute" for limitations purposes when it is imposed by a statute that does not merely recognize or codify liabilities existing at common law. *McDaniel*, 469 N.W.2d at 85 (quoting Minn.Stat. § 541.05, subd. 1(2) (1990)). Manteuffel's claim does not resemble any common law cause of action, and while some data practices act violations resemble the common law tort of invasion of privacy, Minnesota has not recognized this tort. *Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 28 (Minn.1996). We therefore conclude that claims under the data practices act are "liabilit[ies] created by statute" for limitations purposes.

Manteuffel has indicated an intention to seek exemplary damages for a "willful" violation of the data practices act, as provided by Minn.Stat. § 13.01, subd. 1 (1996). We note that a willful violation, as an intentional tort, might fall more clearly under *Larson*. However, this would result in the anomaly of a shorter limitation period for an intentional violation. For this reason, and for the sake of uniformity and avoiding confusion, we hold that the six-year limitation period in Minn. Stat. § 541.05, subd. 1(2), applies to all claims under the data practices act, whether or not the alleged violation is intentional.

### DECISION

Because Manteuffel's data practices act claim, as a liability created by statute, falls within the language of Minn.Stat. § 541.05, subd. 1(2), and because it is neither a wage claim governed by Minn.Stat. § 541.07(5) nor sufficiently analogous to the torts listed in Minn.Stat. § 541.07(1) to qualify as a "tort involving personal injury" for purposes of that statute, the applicable limitations period is six years. The district court therefore erred in dismissing the action as barred by a two-year statute of limitations.

**Reversed.**