*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0221**

Michelle Kirchner, et al.,
Respondents,

vs.

Patricia Jernell, et al.,
Appellants,

Turpen Realty,
Defendant.

**Filed November 10, 2014
Affirmed
Hudson, Judge**

Anoka County District Court
File No. 02-CV-10-4550

Scott A. Johnson, Todd M. Johnson, Hellmuth & Johnson, PLLC, Edina, Minnesota (for respondents)

Anthony C. Palumbo, Anoka County Attorney, Robert D. Goodell, Assistant County Attorney, Anoka, Minnesota (for appellants)

Considered and decided by Kirk, Presiding Judge; Hudson, Judge; and Stoneburner, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HUDSON**, Judge

Appellants challenge the district court's denial of their motion for summary judgment in this malicious-prosecution action, arguing that: (1) they are immune from suit under the official immunity doctrine; (2) they did not initiate criminal prosecution of respondents; and (3) there was probable cause for the charges prosecuted. Because we conclude that the district court correctly determined that genuine issues of material fact preclude summary judgment on the immunity issue, we affirm.

## FACTS

In February 2006, respondent Michelle Kirchner filed an application for public assistance on behalf of herself and her four children.[1] At the time of her application, respondent worked as an independent contractor for Re/Max Associates Plus and Mortgages West. Income earned from these positions was paid to Creative Loan Consulting, Inc. (CLC), a private subchapter S corporation respondent formed in 2003. Respondent withdrew and recognized income from CLC at year's end for tax purposes.

An Anoka County Human Services caseworker assisted respondent with her application. Respondent described her family, assets, and income to the caseworker. She informed the caseworker that she would not know her income until year's end, that she had no knowledge of Minnesota public-assistance programs, and that she was unaware if she was eligible for assistance. The caseworker determined that respondent qualified for

---

[1] "Respondent" refers to Michelle Kirchner. "Respondents" refers to Michelle Kirchner and Jeffrey Kirchner.

MinnesotaCare and her children qualified for Medical Assistance. Respondent renewed her application in April 2006.

A few months later, respondent's file was transferred to appellant Cassandra Volk, a human services caseworker supervised by appellant Patricia Jernell. Respondent and Jernell knew each other. Jernell also worked as a realtor and previously represented the buyer of property for which respondent had served as the listing agent. During the sale period, respondent twice reprimanded Jernell for permitting pre-sale access to the property and threatened to file ethics complaints against her when Jernell's employer demanded additional commission for Jernell's role in the sale.

Shortly after respondent's file was transferred, respondent completed and signed a Minnesota Health Care Programs Renewal Form (renewal form). The renewal form listed respondent's assets, indicated she was self-employed, and reported her 2006 self-employment income to be $0. It is unclear who placed the $0 figure on the renewal form; respondent claims she left the line blank and that the figure was added after she completed the renewal form. Respondent also authorized human services to contact any third party necessary to verify information on the renewal form.

Volk stated at a deposition that she received the renewal form after she conducted a phone screening with respondent. Volk maintained that she became suspicious because the renewal form indicated that respondent's family survived with no income. Volk expressed her concerns to a program coordinator, who directed her to approve the application, refer it for an internal fraud investigation, and discuss the matter with Jernell. Volk indicated that she informed Jernell of the fraud referral, and she admitted that

3

Jernell became upset upon learning respondent's identity. Volk also stated that Jernell agreed that a fraud referral was appropriate, but maintained that Jernell's approval was not required to file the referral.

Respondent, however, alleges that she filled out the renewal form during a consultation with Volk. She maintains that she explained to Volk that she would not calculate her 2006 income until year's end, that she borrowed money from friends and family, and that she relied on caseworkers' advice to provide the information necessary to complete the renewal form. She asserts that she never intended to claim $0 in 2006. Instead, respondent alleges Volk "induced" her to claim $0 income and colluded with Jernell to "manipulate[]" the renewal form to instigate a fraud investigation against her. She asserts that the referral for a fraud investigation was "misleading, factually inaccurate, and omitted critical information."

The record reflects that six Regional Multiple Listing Services (RMLS) printouts, each describing the value of property sold by respondent in the previous year, were attached to the fraud referral. These printouts were acquired by Jernell, who used her realtor's password to access RMLS password-protected records for the purpose of investigating respondent's real-estate sales. Notations in the referral record indicate that these printouts demonstrate that respondent failed to report real estate commissions as income on the renewal form.

The internal fraud referral was assigned to an Anoka County deputy for investigation and was later submitted to the Anoka County Attorney for additional investigation. The county attorney's investigation culminated in the arrests of

respondents; respondent was ultimately charged with one count of wrongfully obtaining assistance. The state later dismissed the criminal complaint without prejudice.

In June 2010, respondents brought suit against appellants, alleging various claims, most of which were disposed of before trial. In November 2013, appellants moved for summary judgment on the remaining claim of malicious prosecution. The district court determined that genuine issues of material fact preclude summary judgment and denied appellants' motion. This appeal follows.

## D E C I S I O N

An order denying summary judgment is immediately appealable under the collateral-order doctrine when the motion is based on a claim of official immunity. *Gleason v. Metro. Council Transit Operations*, 582 N.W.2d 216, 218 (Minn. 1998). A court reviewing the denial of summary judgment determines de novo whether genuine issues of material fact exist and whether the district court erred in its application of the law. *Mumm v. Mornson*, 708 N.W.2d 475, 481 (Minn. 2006). A genuine issue of fact exists when the evidence permits "reasonable persons to draw different conclusions." *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008) (quotation omitted). The evidence is viewed in the light most favorable to the nonmoving parties and all reasonable inferences are drawn in their favor. *Id.*

Appellants argue that the district court erred by concluding that genuine issues of material fact preclude summary judgment, alleging that, as a matter of law, common-law official immunity protects their conduct related to respondent's renewal form. The doctrine of common-law official immunity prevents public officials charged by law with

duties which call for the exercise of "judgment or discretion from being held personally liable to an individual for damages." *Schroeder v. St. Louis Cnty.*, 708 N.W.2d 497, 505 (Minn. 2006) (quotation omitted). The purpose of the doctrine is to enable public officials "to perform their duties effectively, without fear of personal liability that might inhibit the exercise of their independent judgment." *Mumm*, 708 N.W.2d at 490. The application of immunity is a question of law reviewed de novo, *Gleason*, 582 N.W.2d at 219, and "[t]he party asserting immunity has the burden of showing particular facts demonstrating an entitlement to immunity." *Meier v. City of Columbia Heights*, 686 N.W.2d 858, 863 (Minn. App. 2004), *review denied* (Minn. Dec. 14, 2004).

"Before we analyze the application of official immunity, we must first identify the precise governmental conduct at issue." *Mumm*, 708 N.W.2d at 490. Common-law official immunity does not protect officials from liability related to the exercise of ministerial duties, but extends to officials charged with the execution of discretionary functions. *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004). Conduct is discretionary if it requires "individual professional judgment that necessarily reflects the professional goal and factors of a situation." *Mumm*, 708 N.W.2d at 490–91 (quotation omitted). Here, the parties identify two official acts at issue: (1) Jernell's use of her realtor's password to access RMLS records and (2) Volk's decision to refer respondent's case for fraud investigation. It is undisputed that this conduct is discretionary. Therefore, appellants are entitled to official immunity unless they acted maliciously or willfully. *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991).

6

Malice has been defined as "the intentional doing of a wrongful act without legal justification or excuse, or . . . the willful violation of a known right." *Id.* (quotation omitted). In the context of official immunity, an official acts with malice by intentionally committing an act that he or she has reason to believe is legally prohibited. *Id.* Generally, the existence of malice is a question of fact decided by the jury. *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 664 n.5 (Minn. 1999). But when there is no genuine issue of material fact, malice may be decided as a matter of law by the court. *See Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 465 (Minn. 2014) (deciding existence of malice as matter of law because undisputed facts established defendant did not maliciously violate a known right of plaintiff).

Here, the district court determined that genuine issues of material fact exist with regard to both official acts. Regarding the RMLS records, the district court determined that disputed facts remain about "the events that led to the entry of a zero dollar figure on [respondent's] application," and whether Jernell acted "in the service of her alleged personal animus against the [respondent]." The district court determined that "the same reasons" also prevented it from determining whether the fraud referral was legally reasonable, specifically noting that disputed facts remain regarding, "who actually entered zero dollars as self-employment income on the form" and whether "[respondent] verbally communicated that she earned zero income in 2006 to Volk." The district court concluded that resolution of these facts is necessary to determine whether Jernell and Volk colluded to persuade respondent to fill out the renewal form "in a manner that

7

would lead to adverse consequences. . . ." The district court determined that appellants possess no legal justification for their actions if these facts were proven.

Appellants argue, however, that the district court erred by concluding that Jernell's alleged animus toward respondent presents an issue of material fact that precludes summary judgment. We agree. The malice exception "contemplates an objective inquiry into the legal reasonableness of an official's actions." *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994). The fact that an official's act is motivated by a desire to cause "mischief" with another is insufficient to establish malice. *Carnes v. St. Paul Union Stockyards Co.*, 164 Minn. 457, 462, 205 N.W. 630, 631 (1925); *see also Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 317–18 (Minn. App. 1997) ("Malice in the context of immunity connotes a concept unrelated to 'ill will' or 'improper motive.'"), *aff'd in part*, 582 N.W.2d 216 (Minn. 1998). The malice exception applies only if a "clearly established law or regulation" prohibits the official's conduct. *Rico*, 472 N.W.2d at 107. Thus, the fact that Jernell may have acted with animosity toward respondent is not relevant to the determination of whether her conduct is legally reasonable.

But the remaining factual questions identified by the district court, which relate to the events surrounding respondent's listing $0 income, are relevant to the determination of whether Jernell or Volk's conduct was legally reasonable. Here, the appropriate inquiry is whether these questions, resolved in a light most favorable to respondents, would demonstrate conduct prohibited by a well-established law or regulation. In this context, the facts could demonstrate that appellants created a fraud referral based on

8

information they knew to be false, accessed password-protected records to make their claims that the information was false appear credible, and communicated the false information to a law enforcement officer for further investigation. Viewed objectively, if proved, these actions are not legally reasonable; they are akin to providing a false report to law enforcement, *see* Minn. Stat. § 609.505, subd. 1 (2006), or making a false statement that has the effect of harming another's reputation, which is conduct prohibited by the common-law tort of defamation. *See Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 25 (Minn. 1996) (listing elements of defamation claim). We therefore conclude the district court properly determined that resolution of these predicate factual disputes precluded summary judgment.

In addition, malice may be established by conduct that is willfully committed in violation of another's known rights. *Rico*, 472 N.W.2d at 107. Appellants contend that Jernell's accessing of the RMLS listings did not violate respondents' rights because respondent had no recognized right to the privacy of the information in the RMLS listings. We reject appellants' narrow interpretation. Generally, public officials are not immune from suit in intentional tort actions because the "willful and intentional nature" of their acts establishes malice. *LeBaron v. Minnesota Bd. of Pub. Defense*, 499 N.W.2d 39, 41 (Minn. App. 1993), *review denied* (Minn. June 9, 1993); *but cf. Kelly*, 598 N.W.2d at 663 (upholding jury's finding that defendants committed intentional tort of intentional infliction of emotional distress, but did so without malice, because the jury could have concluded the conduct was reckless or justified by the circumstances). Malicious

prosecution[2] is an intentional tort, and we have stated, in a different context, that malicious prosecution results in a "direct invasion" of another's rights. *See Manteuffel v. City of North St. Paul*, 570 N.W.2d 807, 810 (Minn. App. 1997) (citing malicious prosecution as example of intentional tort in data-practices-act claim); *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902, 907 (Minn. App. 1987) (noting that plaintiffs may recover damages for mental anguish and suffering in a malicious prosecution action because plaintiffs have suffered a "direct invasion" of their rights). Here, the disputed facts identified by the district court are also relevant to the elements of respondents' malicious prosecution claim, which, in turn, may establish whether appellants' conduct violated respondents' known rights. We conclude for this reason as well that the district court did not err in denying appellants' motion for summary judgment.

Finally, appellants assert that summary judgment was warranted because undisputed facts in the record gave them ample reason to suspect that respondent misrepresented her income and thus they were "legally justified" in pursuing the fraud investigation. We disagree. In support of their argument, appellants rely on evidence documenting multiple instances in which it appears that respondent asserted that she earned no income. But this evidence does not establish that respondent knew that her claims were false or that appellants believed that respondent intended to claim no income

---

[2] To state a claim for malicious prosecution, respondents must demonstrate: (1) the criminal action was brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action was instituted and prosecuted with malicious intent; and (3) the action terminated in favor of the party asserting the claim. *Dunham v. Roer*, 708 N.W.2d 552, 569 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006).

on the renewal form. Respondent has consistently maintained that appellants knew that she relied on caseworkers' assessments of her employment and income to complete her application for public assistance. She asserts that appellants understood that respondent never intended to claim $0 income, but that they manipulated her renewal form to make it appear that she misrepresented her income. The undisputed facts appellants rely on do not support summary judgment unless additional factual inferences are drawn in appellants' favor. But all factual inferences are to be drawn in respondent's favor as the nonmoving party. *Frieler*, 751 N.W.2d at 564. Therefore the district court did not err in denying appellants' motion for summary judgment.

Appellants also allege that they did not initiate criminal prosecution of respondents, that there was probable cause for the charges prosecuted, and that the district court erred by concluding that genuine issues of material fact preclude summary judgment on these issues. But the scope of review on this interlocutory appeal is limited to the issue of immunity. *Pigs R Us, LLC v. Compton Twp.*, 770 N.W.2d 212, 217 (Minn. App. 2009). We therefore decline to address these additional issues.

**Affirmed.**

11