Melissa GLEASON, Respondent,

v.

The METROPOLITAN COUNCIL TRANSIT OPERATIONS, et al., petitioners, Appellants.

No. C2–96–2475.

Supreme Court of Minnesota.

July 30, 1998.

Briggs and Morgan, Timothy R. Thornton, Eric J. Rucker, Minneapolis, for appellants.

Robert M. Smith, Roger C. Alderson, Minneapolis, for respondent.

## OPINION

TOMLJANOVICH, Justice.

Respondent Melissa Gleason is physically disabled. She suffers from a form of muscular dystrophy known as muscular atrophy, and is confined to a wheelchair. Gleason sued the Metropolitan Council Transit Operations ("MCTO"), the bus driver and a supervisor alleging disability discrimination and various torts arising from an incident when she boarded a bus on December 2, 1995. The defendants' motion for summary judgment on the basis of statutory immunity and official immunity was denied by the district court. The court of appeals held that Gleason's tort claims were not barred by official immunity and that statutory immunity is not a defense to disability discrimination claims under the Minnesota Human Rights Act and remanded for trial.

We hold that Gleason's claims for disability discrimination, false imprisonment and intentional infliction of emotional distress are not barred by official immunity. We affirm the court of appeals in part and remand the case for trial.

On review of a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party, in this case the plaintiff. *Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn.1979).

Gleason is confined to a wheelchair. She uses a three-wheeled motorized wheelchair rather than the familiar four-wheeled wheelchair. Petitioner Merrill Denenny is a bus driver for MCTO, and petitioner Sandra Hoeft is a district supervisor for MCTO. MCTO is a division of the Metropolitan Council engaged in providing regional public transportation services. See Metropolitan Reorganization Act of 1994, ch. 628, art. 2, §§ 4 *et seq.*, 1994 Minn. Laws 1700, 1710–11. The Metropolitan Council is a political subdivision of the state. Minn.Stat. § 473.123, subd. 1 (1996).

MCTO has adopted policies and guidelines for the safe transport and securement of disabled passengers on MCTO buses. Handicap-accessible buses have designated spaces for wheelchair passengers. The spaces are equipped with a set of three belts or straps designed to secure a traditional wheelchair in place so the chair cannot move in case the bus starts or stops suddenly. The buses are also equipped with optional lap belts for wheelchair passengers. The guidelines printed in the drivers' pocket guide state:

> g. Whenever you secure a wheelchair with the tie-downs, you should also routinely fasten the lap belt. However, if the customer requests not to use the lap belt, you should honor that request. If the customer secured his or her own wheelchair on the bus, you are still required to visibly check to be sure the chair is properly secured before moving the bus.

> NOTE: Securing the occupied wheelchair itself with all three tie-down belts is required and must be done before the bus is moved.

Gleason boarded Denenny's handicap-accessible bus on the evening of December 2, 1995 on her motorized three-wheeled wheelchair. What happened after that is disputed, but for the purpose of the motion we must accept the facts as set forth by Gleason. *See Delgado*, 289 N.W.2d at 483. Gleason alleges that as soon as the bus stopped for her she recognized Denenny as a driver who had, on previous trips, made disparaging remarks about Gleason's three-wheeled wheelchair and failed to secure her wheelchair adequately prior to proceeding on his route. Nevertheless, Gleason boarded the bus and backed her chair into the designated space. She then waited for Denenny to secure her wheelchair as required. Gleason states that instead, Denenny immediately stood up and loudly informed the other passengers on the bus that they should disembark and board the next bus, which was scheduled to arrive in approximately 30 minutes. Without making any attempt to secure Gleason's three-wheeled wheelchair, Denenny radioed for a supervisor, stating that he had a "young one in a tricycle" whom he could not transport. Gleason alleges that she requested immediately to be put off the bus but was refused exit by Denenny, who told her that she would

have to wait for the arrival of an MCTO supervisor.

When the supervisor (later identified as Hoeft) arrived, Gleason alleges she tried to talk to her to lodge a complaint against Denenny for his abusive behavior, but was ignored by the supervisor who instead engaged in discussion with the driver concerning the difficulty of securing Gleason's wheelchair. When Gleason objected that Denenny had made no attempt to secure the chair before calling for help, Denenny and Hoeft continued to ignore her and discuss in her presence the difficulty of adequately securing Gleason's wheelchair. As Gleason became increasingly upset and agitated, she began to experience tremors, a condition associated with her disability. Consequently, Hoeft pointed at Gleason, telling her that she was "physically upset" and would not be allowed to ride with Denenny. Gleason was transferred to another bus, along with the remaining passengers from Denenny's bus, and the trip proceeded without further incident. Gleason alleges that she suffered embarrassment and humiliation as a result of the incident and was made to feel a cause of great inconvenience to other passengers.

Gleason filed suit in April 1996 against MCTO, Denenny and Hoeft. Her complaint alleged disability discrimination and aiding and abetting disability discrimination in violation of the Minnesota Human Rights Act ("MHRA"), false imprisonment, intentional infliction of emotional distress, respondeat superior liability by the MCTO for the acts of Denenny and Hoeft, and negligent hiring, training, retention and supervision of employees by the MCTO.[1] Shortly after filing a joint answer, the defendants filed a motion to dismiss the claims for lack of subject-matter jurisdiction or, in the alternative, for summary judgment based on statutory immunity and official immunity. The trial court found

that it had subject-matter jurisdiction and denied the motion for summary judgment.

The court of appeals, by a divided panel, affirmed in part and reversed in part the denial of summary judgment. *See Gleason v. Metropolitan Council Transit Operations*, 563 N.W.2d 309, 321 (Minn.App.1997), *rev. granted* (Minn., Aug. 5, 1997). The majority held that the statutory immunity granted to political subdivisions of the state by Minn. Stat. § 466.03, subd. 6 (1996) ("discretionary function immunity"), cannot be asserted as a defense to disability discrimination claims brought under the MHRA, Minn.Stat. ch. 363 (1996). *Id.* at 320. It also held that the tort claims brought against MCTO for negligent hiring, training, retention and supervision were barred by statutory immunity. *Id.* The court of appeals affirmed the denial of common-law official immunity. *Id.* at 321.

At oral argument, Gleason's counsel waived all negligence claims against the MCTO and a count described as "respondeat superior."[2] Gleason also dismissed any claims against supervisor Hoeft. The only issue remaining before this court is whether Gleason's claims for disability discrimination, false imprisonment and intentional infliction of emotional distress against the driver are barred by statutory or official immunity.

■ Although denial of a motion for summary judgment is not ordinarily appealable, an exception to this rule arises when the order denies summary judgment based on statutory or official immunity. *Zank v. Larson*, 552 N.W.2d 719, 721 (Minn.1996); *Watson ex rel. Hanson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 411 (Minn.1996). The ground for the exception is that immunity from suit is effectively lost if a case is erroneously permitted to go to trial. *Anderson v. City of Hopkins*, 393 N.W.2d 363, 364 (Minn.1986). On review of an order denying summary judgment, this court must

---

1. The complaint alleged five counts: Count I, "Disability Discrimination and Aiding and Abetting Disability Discrimination"; Count II, "False Imprisonment"; Count III, "Intentional Infliction of Emotional Distress"; Count IV, "Negligent Supervision, Negligent Training, Negligent Retention and Negligent Hiring"; and Count V, "Respondeat Superior."

2. Gleason's counsel stated that he was not aware of a cause of action called "respondeat superior." Accordingly, he dismissed Count V of the complaint, entitled "respondeat superior." He has not waived any claim for vicarious liability by the employer for any wrongful act of the employee driver.

determine whether there are genuine issues of material fact and whether the district court erred in applying the law. *Watson*, 553 N.W.2d at 411. The application of immunity is a question of law, which the court reviews de novo. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn.1996).

■ The starting point for analysis of an immunity question is identification of "the precise governmental conduct at issue." *Watson*, 553 N.W.2d at 415.[3] MCTO argues that the conduct at issue is the MCTO's policies and guidelines regarding the appropriate means of safely securing and transporting wheelchairs on MCTO buses, and that anything inappropriate in Denenny's conduct or demeanor was merely an expression of frustration at his difficulty in implementing those policies with respect to Gleason's nonstandard wheelchair.

Our examination of the pleadings, however, reveals that Gleason's complaint does not challenge the MCTO policy regarding securing or safe transport of wheelchairs or disabled passengers. Rather, Gleason alleges a specific instance of disability discrimination, intentional infliction of emotional distress, and false imprisonment by the driver. The allegations of Gleason's complaint assert that she was falsely imprisoned on Denenny's bus despite her repeated requests to disembark,

that Denenny stated that she should not be allowed to ride an MCTO bus with her three-wheeled wheelchair, that Denenny repeatedly made rude and offensive remarks to her, that Denenny publicly belittled Gleason in front of other passengers, and that this conduct was perpetrated solely because of Gleason's disability, which confines her to a wheelchair.[4]

Gleason does not allege that MCTO routinely denies passage to its disabled passengers, or that its wheelchair policies have prevented her on other occasions from being satisfactorily transported on MCTO buses. These allegations do not relate to general MCTO policies and guidelines, but to the specific cluster of words and acts occurring on the evening of December 2, 1995. We are unpersuaded by MCTO's characterization of the conduct at issue and agree with the court of appeals. We conclude that the conduct at issue consists of (1) Denenny's harassing comments and publicly humiliating Gleason in order to embarrass her and discourage her from riding the MCTO, (2) Denenny's refusal to allow Gleason to disembark the bus, and (3) his refusal to secure Gleason's wheelchair and proceed on his route as required by his duties.

We turn next to the issue of statutory immunity, also called "discretionary function immunity."[5] The defendants moved for

---

3. The majority and minority opinions in the court of appeals differed sharply on precisely what conduct formed the basis of Gleason's complaint. The majority stated that the pleadings and memorandum in opposition to summary judgment alleged three offending acts:

> (1) Denenny's harassing/belittling comments made in an attempt to embarrass Gleason and discourage her from using the MCTO; (2) Denenny's failure to secure the wheelchair; and (3) Denenny's refusal to let Gleason off the bus.

*Gleason*, 563 N.W.2d at 315. The minority, however, identified the offending conduct as (1) false imprisonment and (2) the MCTO policies concerning the securing of wheelchairs. *Id.* at 322. The different outcome between the majority opinion and the dissent is predicated mainly on this discrepancy in identifying the conduct at issue.

4. The petitioners sought summary judgment on the pleadings only on the basis of statutory immunity and official immunity. See Minn. R. Civ P. 12.03. We therefore express no opinion about whether the respondent has alleged facts sufficient to state a claim.

5. "Minnesota's Tort Claims Act generally allows governmental entities, such as the [MCTO], to be held liable for their torts subject to certain exceptions and limitations." *Watson*, 553 N.W.2d at 412; see Minn.Stat. ch. 466 (1966). Statutory immunity (also called "discretionary function" immunity), codified at section 466.03, subd. 6, is one such exception. *Watson*, 553 N.W.2d at 412. That section establishes that the liability imposed by section 466.02 does not apply to "any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6.

The purpose of statutory immunity is "to preserve the separation of powers by insulating executive and legislative policy decisions from judicial review through tort actions." *Rico v. State*, 472 N.W.2d 100, 104 (Minn.1991). Our cases expressly state the central inquiry in this examination is to determine "whether the challenged government conduct involves a balancing of policy considerations." *Id.* If the challenged conduct represents decision-making at the policy or planning level, it is entitled to statutory protec-

summary judgment, claiming that statutory immunity, Minn.Stat. § 466.03, subd. 6, protected them from suit. The trial court denied summary judgment on the grounds of statutory immunity. The court of appeals, relying on its own decision in *Davis v. Hennepin County*,[6] held that discretionary function immunity was abrogated by the Minnesota Human Rights Act, and therefore did not apply to Gleason's disability discrimination claims. *Gleason*, 563 N.W.2d at 320. However, the court of appeals did hold that the tort claims for negligent hiring, training, retention and supervision were barred by statutory immunity. In the case before us, Gleason has waived all claims against Hoeft and any direct claims against the MCTO based upon negligence; she has also dismissed the count called "respondeat superior." We have already concluded that the MCTO policies regarding the securing of wheelchairs and safe transport of disabled passengers are not at issue. The only claims remaining relate not to the balancing of policy objectives or economic considerations at the policy-making level, but solely to Denenny's intentional conduct. We therefore find it unnecessary to reach the question of whether statutory immunity is abrogated by the Minnesota Human Rights Act.

We turn, finally, to the question of official immunity. Official immunity protects "a public official charged by law with duties that call for the exercise of judgment or discretion unless the official is guilty of a wilful or malicious wrong." *Watson*, 553 N.W.2d at 414 (quoting *Rico v. State*, 472 N.W.2d 100, 106–07 (Minn.1991)). The doctrine is designed to further the public interest by limiting judicial second-guessing of the acts of legislative or executive officials where a measure of discretion or judgment is called for. *Id.; see also Mitchell v. Forsyth*, 472 U.S. 511, 525–26, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396

(1982)) (similar policy underlying federal qualified immunity against § 1983 claims).

Unlike statutory immunity, official immunity protects operational discretion and not just policymaking discretion, but the protected conduct must require more discretion than mere "ministerial" duties. *Watson*, 553 N.W.2d at 414. An official's duty is ministerial when it is "absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Id.* (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). Official immunity has been held to protect the judgment of an MCTO bus driver about how to handle an assault in progress on his bus. *Id.* at 415. It is regularly applied to the judgment required of police officers in discharging their duties. *See State ex rel. Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 570 (Minn.1994); *Pletan v. Gaines*, 494 N.W.2d 38, 41 (Minn.1992); *Elwood v. Rice County*, 423 N.W.2d 671, 678–79 (Minn.1988). Official immunity does not protect an official against a defamation claim, although the decision to discharge an employee may be protected. *Bauer v. State*, 511 N.W.2d 447, 449 (Minn.1994). Decisions, pursuant to state policy, regarding release and supervision of a parolee are likewise protected by official immunity. *Johnson*, 553 N.W.2d at 46.

In the case before us, the only remotely discretionary act called for was the driver's attempt to secure the wheelchair appropriately, based on guidelines and diagrams distributed by the MCTO. Nothing about that decision requires the kind of split-second decision-making involved in a police officer deciding, for instance, whether to begin or continue a high-speed chase or whether to stop a vehicle on suspicion that it may have been involved in a reported robbery. *See, e.g., City of Mounds View*, 518 N.W.2d at 567; *Elwood*, 423 N.W.2d at 671. Similarly, even the discretionary acts of an MCTO driver in Watson required judgment about

tion; if the conduct represents mere operational level implementation of policy, it is generally unprotected. *Id.*

We have interpreted the discretionary function exception narrowly—protecting only those activities which require the balancing of policy objectives, "involving social, political, or economic

considerations, rather than merely professional or scientific judgments." *Zank*, 552 N.W.2d at 721 (quoting *Steinke v. City of Andover*, 525 N.W.2d 173, 175 (Minn.1994)).

6. 559 N.W.2d 117 (Minn.App.1997) (holding that statutory immunity is abrogated by the MHRA).

how to deal with a situation involving passenger safety not specifically covered by the guidelines. *Watson*, 553 N.W.2d at 415. Although the MCTO asserts that securing a three-wheeled wheelchair involved some judgment, and therefore was not "absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts," *id.*, the only judgment called for on this occasion was to decide specifically the best, or even adequate, way to secure this particular chair by this particular set of belts. If the chair had been a standard four-wheeled variety, the act would clearly have been purely ministerial. On this set of facts, the discretion called for is considerably less than that required of a psychiatrist treating a mentally ill citizen, which was held by this court not to be protected conduct. *Terwilliger v. Hennepin County*, 561 N.W.2d 909, 913 (Minn.1997). Further, the rationale underlying *Terwilliger*, that the inequity of extending official immunity to governmental employees who perform the same proprietary functions as private entities would be unwarranted, applies equally to a bus driver who discriminates against a disabled passenger. The doctrine of official immunity is not intended to protect such conduct as that engaged in by Denenny with respect to Ms. Gleason.

We hold, therefore, that Gleason's claims of false imprisonment, intentional infliction of emotional distress, and disability discrimination based on Denenny's harassing and belittling comments and his refusal to allow Gleason to disembark his bus are not barred from suit by the doctrine of official immunity because such conduct is not discretionary conduct intended to be protected by the doctrine. The remaining claims brought by Gleason against Hoeft and the MCTO were waived at oral argument. We affirm the division of the court of appeals in part and remand to the trial court with instructions to dismiss Counts IV and V and proceed on the merits against Denenny and the MCTO on Counts I, II, and III of the complaint.

Affirmed in part and remanded.