Nicci C. **FEAR**, Respondent,

v.

**INDEPENDENT SCHOOL DISTRICT 911, et al., Appellants,**

Lindquist & Leaf, Inc., Defendant.

No. C8–01–486.

Court of Appeals of Minnesota.

Sept. 18, 2001.

Thomas A. Foster, Thomas A. Foster & Associates, Ltd., Minneapolis, for respondent.

Kay Nord Hunt, Ehrich L. Koch, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellants.

Considered and decided by
ANDERSON, Presiding Judge,
AMUNDSON, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge *

Respondent was injured when he fell from a snow pile on a school playground. The snow pile was created because the school district decided to place snow removed from the parking lots on the playground. Respondent sued the school, school district, various district employees (collectively, appellants), and a contractor for negligence. Appellants moved for summary judgment claiming statutory, recreational, official, and vicarious official immunity. The district court denied the motion for summary judgment on all grounds except as to recreational immunity, on which the court concluded there was a material issue of fact. On appeal, appellants argue they are entitled to statutory immunity on the snow placement issue and for the school district's hiring, supervision, and training decisions. Appellants also contend that respondent's claims are barred by recreational immunity under Minn.Stat. § 466.03, subd. 6e (2000). Finally, they contend that the district employees are entitled to official immunity and that the school district is entitled to vicarious official immunity from the claim of negligent supervision. We affirm in part, reverse in part, and remand for trial.

## FACTS

On February 4, 1997, while a third-grade student at Cambridge Elementary School, respondent Nicci Fear sustained injuries when he fell from a snow pile onto a piece of ice during recess on the school playground. The playground was the only open space that could accommodate the large amount of snow plowed from the parking lot. The school district claims that placing the snow on the playground minimized damage to school property, accommodated traffic and safety concerns, and was within the district's limited snow removal budget.

Fear does not know how he fell from the snow pile, but he landed on a piece of ice about four inches square by two inches high. Other pieces of ice were in the area. Fear got up, spoke with his teacher, and then went to see the school nurse. The students were not told to stay off of the snow pile, although they were not supposed to jump from high places. Fear claims there were two or three adult su-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

pervisors around, but he does not recall who they were.

Fear and his mother, Sandra Fear, sued the school; the school district; Principal Charles Niles; school district employees Karen Hammero, Andrea Koenig, and Karla Neumann; and Lindquist & Leaf, the snow removal contractor, for failure to exercise ordinary and reasonable care. The claim stated they were negligent in performing their duties to Fear, which resulted in his injury.

Appellants moved for summary judgment, arguing that the claim was barred because of statutory immunity, recreational immunity, official immunity, and vicarious official immunity.[1] The district court denied the motion for summary judgment on all grounds except as to recreational immunity.

## ISSUES

1. Did the district court err in denying statutory immunity to the school and the school district ?

2. Did the district court err in determining there was a question of material fact regarding whether appellants were entitled to recreational immunity?

3. Did the district court err in denying official immunity to the district employees and vicarious official immunity to the school and school district?

## ANALYSIS

■■■■ An order denying an immunity defense by way of summary judgment is appealable because immunity from suit is effectively lost if a case is erroneously

permitted to go to trial. *Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn. 1986). An appellate court reviews an order denying summary judgment by determining whether there is a genuine issue of material fact and whether the district court erred in applying the law. *Gleason v. Metro. Council Transit Operations,* 582 N.W.2d 216, 218–19 (Minn.1998). Whether immunity applies is a legal question, which is reviewed de novo. *Id.* at 219. The party asserting an immunity defense has the burden of demonstrating facts showing that it is entitled to immunity. *Gerber v. Neveaux,* 578 N.W.2d 399, 402 (Minn.App. 1998), *review denied* (Minn. July 16, 1998). In reviewing a denial of summary judgment based on a claim of immunity, this court presumes the truth of the facts alleged by the nonmoving party. *Burns v. State,* 570 N.W.2d 17, 19 (Minn.App.1997).

## I. Statutory Immunity

Appellants argue that the school district's decision to place the snow on the playground was a discretionary matter because it was a planning-level decision, which is protected by statutory immunity. Appellants claim that they weighed political, social, practical, and financial considerations to determine the safest way to deal with the snow problem while staying within the school district's snow removal budget. They also assert that the school district's hiring, supervising, and training of its employees is a planning-level decision, which is subject to statutory immunity as a matter of law.[2] In the interest of justice, we review this issue on appeal. *See* Minn. R. Civ.App. P. 103.04 (stating appellate

1. Lindquist & Leaf did not participate in the motion for summary judgment and is not part of this appeal.

2. This was an issue in appellants' motion for summary judgment to the district court but

was neither addressed in respondent's response to the motion or in the court's order denying summary judgment. Appellants address this issue in their appeal.

court may review any matter as interest of justice may require).

## A. Snow Removal

Under the Minnesota Tort Claims Act, a municipality[3] can be held liable for the torts of its officers, agents, and employees. Minn.Stat. § 466.02 (2000). There are specific exceptions to municipal tort liability, including discretionary and recreational immunity. Minn. Stat. § 466.03, subds. 6, 6e (2000). Statutory immunity is to be construed narrowly. *Angell v. Hennepin County Reg'l Rail Auth.*, 578 N.W.2d 343, 346 (Minn.1998). Discretionary immunity, sometimes referred to as "statutory immunity," protects the government from claims arising from performing or failing to perform a discretionary act, regardless of whether it abused its discretion. Minn.Stat. § 466.03, subd. 6.

Statutory immunity is based on the separation of powers and is intended to prevent judicial review, through the medium of a tort action, of executive and legislative policy-making decisions. *Zank v. Larson*, 552 N.W.2d 719, 721 (Minn.1996). The supreme court has stated that

> [i]f a governmental decision involves the type of political, social and economic considerations that lie at the center of discretionary action, including consideration of safety issues, financial burdens, and possible legal consequences, it is not the role of the courts to second-guess such policy decisions.

*Watson by Hanson v. Metro. Transit Comm'n,* 553 N.W.2d 406, 412 (Minn.1996) (citation omitted). Thus, although nearly any governmental act requires some measure of discretion, the immunity protects only those discretionary acts that involve the "balancing [of] policy objectives such as economic, social, and political factors." *Christensen v. Mower County,* 587 N.W.2d 305, 307 (Minn.App.1998) (citation omitted).

Statutory immunity, however, does not protect all acts of judgment by government agents. *Nusbaum v. Blue Earth County,* 422 N.W.2d 713, 722 (Minn. 1988). In defining what is a discretionary act, the supreme court has made a general distinction between "operational" and "planning" decisions. *Larson v. Indep. Sch. Dist. No. 314,* 289 N.W.2d 112, 120 (Minn.1979). While planning decisions involve questions of public policy and are protected as discretionary decisions, operational decisions relate to the day-to-day government operation and are not protected as discretionary decisions. *Holmquist v. State,* 425 N.W.2d 230, 232 (Minn.1988). In analyzing a claim of immunity, the court must ascertain exactly what governmental conduct is being challenged. *Steinke v. City of Andover,* 525 N.W.2d 173, 175 (Minn.1994). "The critical inquiry is whether the conduct involved a balancing of policy objectives." *Id.* (citation omitted).

In response to respondent's motion for summary judgment, the school district submitted two affidavits to the district court to support its claim that the snow placement decision was a planning-level decision entitled it to statutory immunity. In his affidavit, Principal Niles stated:

> Prior to the 1996/97 school year, the District decided to have the snow in the parking lot pushed to the sides. It was too costly to have a truck haul away the snow. Unfortunately, this method caused problems The snow piled around

---

**3.** A school district is defined as a municipality under this act. Minn.Stat. § 466.01, subd. 1 (2000).

the outside of the parking lot interfered with the loading and unloading of school buses. Not only were the snow piles an obstruction, students also could be distracted by playing on the snow and sometimes missed their bus. There were also safety issues. Melting snow supplied a constant source of water in the spring, as well as slippery conditions on the parking lot created by the freezing and thawing of the snow.

Niles stated that cost was a major factor in deciding to move the snow to the playground because the district had a limited budget for snow removal. He also claimed that the cost of moving the snow increased depending on the distance it is moved and the time spent moving it. In addition, he pointed out that due to the natural drainage of the land, the playground was a good spot for the snow "as the run-off would flow away from the school."

In another affidavit, Mark Eisenbacher, director of building and grounds for the school district, claimed that the decision to place the snow on the playground involved a "balancing of many factors, including the consideration of social, practical and safety issues, as well as financial constraints." The final decision regarding snow removal belonged to Eisenbacher. He did not provide information on the specific financial limitations the district faced, but rather stated that the district had limited financial resources available for snow removal. After reciting the problems the district faced in dealing with the snow, Eisenbacher concluded that placing the snow on the playground, the only sufficiently open space, allowed for snow equipment access, lessened the impact on local traffic, made for safer loading and unloading of students from the buses, and avoided damage to the school district's buildings. He commented that trucking the snow to a different location off school property would be cost prohibitive.

The district court concluded that Eisenbacher's affidavit was conclusory and "insufficient to show that the [school district's] decision was a planning-level one" and held that the school district is not entitled to statutory immunity.

In reaching its conclusion, the district court relied on *Conlin v. City of Saint Paul*, 605 N.W.2d 396 (Minn.2000). In *Conlin*, the city appealed from a decision by this court holding that it was "not entitled to statutory immunity for its failure to use signs to warn motorists about the conditions of recently sealed streets." *Id.* at 398. The supreme court concluded that affidavits submitted by the city did not provide sufficient evidence that it made a planning-level decision and it was therefore not entitled to statutory immunity. *Id.* at 403. The court set out its reasoning for finding that the affidavits did not provide sufficient evidence by stating:

> [R]ather than explaining how and why a decision pertaining to the street sealing project was made and detailing the underlying considerations, the [street engineer's] affidavits are conclusory. The affidavits merely identify generalized concerns and seemingly parrot back language from our case law without incorporating *specific facts* demonstrating that a [planning-level] decision was in fact made.

*Id.* (emphasis added). The court commented that the city (1) said it considered the minimal public safety concerns involved in the project but failed to explain the concerns or how they played into the decision; (2) claimed that residents would be inconvenienced by barricades but did not show how it arrived at that conclusion; and (3) evaluated the financial considerations but did not provide evidence of actual cost of the various alternatives. *Id.* at 403.

The court's insistence on specific information and actual numbers is not for the purpose of interfering with the legislative process of evaluating the significance of financial costs to justify the city's decision. *Id.* at 401. However, the city's failure to provide actual numbers to support a claim of discretionary decisionmaking is a factor to be considered by the courts when determining whether the evidence supports the city's claim that a particular decision should be characterized as a protected planning-level decision. *Id.*

Finally, the court stated that

> [by] allowing minimal averments in an affidavit to be sufficient evidence of a planning decision, there is a risk that professional or scientific decisions, as well as nondecisions, will be bootstrapped into planning decisions and thus protected by statutory immunity.

*Id.* at 403.

 Here, the affidavits do not provide specific facts in support of the assertion that placement of the snow was based on a planning-level decision. The school district failed to establish that there was a definite policy decision made regarding snow placement. Further, the school district did not provide specific evidence of any budgetary restrictions and considerations. The affidavits identify issues the school district *might* have considered, but the possibility of bootstrapping and the requirement that statutory immunity be narrowly construed support the district court's conclusion that there was insufficient evidence to support the assertion that placement of the snow on the playground was based on a planning-level decision protected by statutory immunity.

## B. Hiring, Supervising, and Training Decisions

 Hiring, supervising, training, and retaining municipal employees are policy-level activities that are protected by statutory immunity. *Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 320 (Minn.App.1997), *aff'd in part*, 582 N.W.2d 216 (Minn.1998).[4] The supreme court has held that the training of city bus drivers requires the balancing of financial, economic, and social considerations, which is a planning-level decision protected by statutory immunity. *Watson*, 553 N.W.2d at 413. The court has also held that supervision of parolees is a discretionary act subject to statutory immunity. *Johnson v. State*, 553 N.W.2d 40, 47 (Minn.1996). Further, this court has held that the state was entitled to statutory immunity where an accident victim claimed that the state negligently trained and supervised its snowplow operators. *In re Alexandria Accident of Feb. 8, 1994*, 561 N.W.2d 543, 548 (Minn.App.1997).

 Niles's affidavit supports the claim that the hiring, training, and supervision of school employees are policy-level activities, and caselaw holds that analogous municipal organizations are entitled to statutory immunity for the hiring, training, and supervision of their employees. Therefore, we hold that the school district is protected by statutory immunity on this issue, and thus reverse.

## II. Recreational Immunity

Appellants assert that respondent's claim of negligence is barred by recreational immunity under Minn.Stat. § 466.03, subd. 6e, arguing that the general trespasser standard, rather than the

---

4. The issues appealed to the supreme court in *Gleason* do not involve the claims for negligent supervision, hiring, training, and retention of employees. The issue of statutory immunity was not before the supreme court.

child trespasser standard, should be applied, which is contrary to the district court's conclusion. The two standards are from the Restatement (Second) of Torts §§ 335, 339 (1965), respectively. The district court found that "[w]hether the school district is entitled to recreational use immunity is an issue of material fact to be determined at trial."

▮▮▮ Minn.Stat. § 466.03, subd. 6e, states that a school district is immune from tort liability if the claim is

> based upon the construction, operation, or maintenance of any property owned or leased by the municipality that is intended or permitted to be used as a park, as an open area for recreational purpose, or for the provision of recreational services * * * [and] the claim arises from a loss incurred by a user of a park and recreation property or services. Nothing in this subdivision limits the liability of the municipality for conduct that would entitle a trespasser to damages against a private person.

Therefore, recreational immunity "does not wholly absolve state agencies from liability, rather it enables them to treat visitors, in the tort context, as trespassers rather than licensees or invitees." *Sirek by Beaumaster v. State, Dept. of Natural Res.*, 496 N.W.2d 807, 809 (Minn.1993). A public entity is liable only if it violated the standard of care that a private landowner owes to a trespasser" under Minn.Stat. § 466.03, subd. 6e. *Martin v. Spirit Mountain Recreation Area Auth.*, 566 N.W.2d 719, 721 (Minn.1997) (citation omitted). The question becomes whether to apply the general trespasser standard or the child trespasser standard.

▮▮▮ The general trespasser standard can be applied to adults and children. Restatement (Second) of Torts § 335, cmt. c. Section 335 specifically provides:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

> (a) the condition

> (i) is one which the possessor has created or maintains and

> (ii) is, to his knowledge, likely to cause death or [serious] bodily harm to such trespassers and

> (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

> (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

Restatement (Second) of Torts § 335; *see Hanson v. Bailey*, 249 Minn. 495, 500, 83 N.W.2d 252, 257–58 (1957) (concluding section 335 correctly enunciates applicable law). "Each of the Restatement's four requirements must be met for the state to be held liable." *Johnson v. State*, 478 N.W.2d 769, 772 (Minn.App.1991) (citation omitted), *review denied* (Minn. Feb. 27, 1992). This standard holds a landowner "liable only for failing to exercise reasonable care to warn trespassers about hidden, artificial dangers created or maintained by the landowner." *Sirek*, 496 N.W.2d at 810 (citation omitted). "The landowner has no duty to eliminate these conditions from the land in order to accommodate trespassers but only to give them adequate warning." *Id.* (citation omitted). Thus, a landowner is

> entitled to assume trespassers will realize that no preparation has been made for their reception and will, therefore, be on the alert to observe the conditions which exist upon the land.

Restatement (Second) of Torts § 335 cmt. f.

■ Restatement (Second) of Torts § 339, in contrast, imposes a heightened standard of care on landowners with respect to child trespassers by stating:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Minnesota adopted section 339 in place of the attractive nuisance doctrine in order to abolish the "idea of invitation * * * as condition precedent to liability in the case of young children injured." *Gimmestad v. Rose Bros. Co.*, 194 Minn. 531, 537, 261 N.W. 194, 196 (1935).

[O]ne who maintains on his premises an artificial condition is liable for resulting injury to young children trespassing thereon if [the conditions of § 339 are met].

*Id.* at 536, 261 N.W. at 196. Section 339 only applies, however, where children are "likely to trespass."

■ Here, the children were allowed to play on the snow piles during recess with school district employees present, and therefore the children arguably would not have realized the risk of injury involved. While there was supervision during recess, similar to cases applying section 335, the facts of this case are more directly analogous to section 339, the successor to the attractive nuisance doctrine. We have children playing during recess on a playground that has snow piles that attract their attention, and they are not prohibited from playing on them. The supreme court has stated that school districts have a duty of reasonable care to their students. *Fallin v. Maplewood–N. St. Paul Dist. No. 622*, 362 N.W.2d 318, 321 (Minn.1985). Absent caselaw applying section 335 to school settings, we conclude that section 339 is more appropriate and shall be applied at trial. Whether to apply section 339 to school supervised playground settings appears to be an issue of first impression. Also, whether the school district is entitled to recreational immunity under section 339 is a question of material fact to be determined at trial.

## III. Official and Vicarious Official Immunity

Appellants argue that the school district employees who supervised the playground activities and Principal Niles are protected under the doctrine of official immunity. In claiming that the employees are protected, appellants argue that the district would be protected under vicarious official immunity. Respondent claims that the school district employees were negligent in failing to provide adequate supervision during the recess period when he was harmed. The district court concluded that there was in-

sufficient evidence to show that the employees exercised discretion with regard to the children playing on the snow piles and therefore they were performing a ministerial task, which is not protected by official immunity

## A. Official Immunity

■ Whether actions of governmental employees are protected by official immunity is a question of law. *Elwood v. Rice County*, 423 N.W.2d 671, 674–75 (Minn.1988). The official immunity doctrine ensures that

> a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages.

*Id.* at 677 (quotation and citation omitted). It "protects public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Id.* at 678 (citations omitted). Official immunity requires the discretion to be exercised on at least an operational level and is something more than the performance of merely "ministerial" duties. *Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn.1992). "[O]fficial duty is ministerial when it is absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Elwood*, 423 N.W.2d at 677 (quotation omitted). "Operational level decisions, on the other hand, involve decisions relating to the ordinary day-to-day operations of the government." *Conlin*, 605 N.W.2d at 400 (citation omitted). "A discretionary act requires the exercise of individual judgment in carrying out the official's duties." *Kari v. City of Maplewood*, 582 N.W.2d 921, 923 (Minn.1998) (citation omitted). An act involving some discretion may nonetheless still be a ministerial task. *See Williamson v. Cain*, 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976) (ruling that tearing down house was ministerial, despite making independent decisions relating to job).

Principal Niles's affidavit does not establish the existence of a school policy regarding recess or children playing on the snow piles. In fact, Niles specifically states that the teachers do not rely on him to decide whether recess will take place outside, what the students do during recess, or how the teachers will supervise the students. Niles commented that "[t]here is not a fixed designated rule for making any of these decisions." He stated that these are discretionary matters delegated to the teachers, and the teachers have the duty of supervising the students during recess. The decisions made during playground supervision are separate and distinct from the planning-level decisions involved in hiring, training, and supervising district employees.

■ Niles, as principal, is responsible for the general safety and welfare of students. There is no evidence that Niles participated in the general supervision of the teachers regarding supervising the children at recess or that he made a planning-level decision regarding the snow piles on the playground. The school district failed to show that Niles did not abdicate his ultimate responsibility for the safety and welfare of students to the teachers. Nowhere in his affidavit did he address the potential danger to children playing on the snow piles, and he did not establish the existence of a school policy on the point. Therefore, Niles is not entitled to official immunity.

■ School district employees Hammero, Koenig, and Neumann were in charge of supervising the students when respondent was injured. While they exercised some discretion in deciding what the students would be permitted to do, that does not automatically guarantee immuni-

ty. *See Terwilliger v. Hennepin County,* 561 N.W.2d 909, 913 (Minn.1997) (stating exercise of some degree of judgment or discretion does not automatically confer immunity). The crucial focus is on the nature of the act. *Id.* There was no evidence provided to the court by the employees to show that they actually made any decisions regarding recess and children playing on the snow piles. Because there is insufficient evidence that the employees made discretionary decisions on these matters, we conclude that they are not granted official immunity as a matter of law. Fact issues remain for resolution at trial.

### B. Vicarious Official Immunity

 If a public official is entitled to immunity for a discretionary act, the employing entity is generally entitled to vicarious official immunity as well. *Pletan,* 494 N.W.2d at 42.

Because we conclude that the employees are not protected by official immunity, the school district is not protected by vicarious official immunity.

### DECISION

We conclude that the district court did not err in denying appellants' motion for summary judgment. The school district did not provide adequate proof that its decision to place the snow on the playground was a planning-level decision entitled to statutory immunity. With regard to the claim of statutory immunity as to hiring, training, and supervising district employees, we hold the school district is entitled to statutory immunity. Further, whether the school district is entitled to recreational immunity is a question to be determined at trial by applying Restatement (Second) of Torts § 339, the child trespasser standard. We also conclude that Niles is not entitled to official immunity because there is no proof that he made any decisions about child safety with regard to playing on the snow piles. Because there is insufficient evidence to prove that the employees made any decisions as to supervising the children at recess and playing on the snow pile, they also are not entitled to official immunity. Finally because the school district employees are not entitled to official immunity, the school district is not entitled to vicarious official immunity.

**Affirmed in part, reversed in part, and remanded.**