*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1448**

Lisa Miller, et al.,
Respondents,

vs.

Dan Marosok, et al.,
Defendants,

Forest Lake Area High School d/b/a
Independent School District #831,
Appellant.

**Filed May 18, 2015
Reversed
Bjorkman, Judge**

Washington County District Court
File No. 82-CV-13-5668

James A. Batchelor, Batchelor Law Firm, P.A., Minneapolis, Minnesota; and

Scott Wilson, Minneapolis, Minnesota (for respondents)

William L. Davidson, Timothy J. O'Connor, Peter D. Stiteler, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Hudson, Judge; and Bjorkman, Judge.

**BJORKMAN**, Judge

Appellant challenges a partial denial of summary judgment, arguing that it is entitled to vicarious official immunity and recreational-use immunity with respect to respondents' negligent-supervision claim. Because we conclude that vicarious official immunity extends to the claim, we reverse.

**FACTS**

In February 2011, respondent Lisa Miller's 16-year-old daughter, respondent McKenna Konze (together Konze), was playing "capture the flag" in a gymnasium during physical-education class. Teachers Paul Kendrick and Jeff Wilson had combined their respective classes and the students elected to play the game as a "transitional activity." Transitional activities may be used to fill time or accommodate for space limitations, but are not part of the formal physical-education curriculum. During the game, Konze collided with fellow student Dan Marosok and was knocked to the floor. Konze sustained facial fractures and later developed severe headaches as a result of the accident. Kendrick and Wilson were talking in a hallway connected to the gym when the accident occurred.[1]

Konze sued appellant Forest Lake Area High School (the school district) and Marosok. She alleged that the school district was negligent in allowing teachers to

---

[1] Both teachers testified that they were supervising from a mezzanine above the gym. But on appeal from a denial of summary judgment, we assume that the facts alleged by the nonmoving party are true. *Shariss v. City of Bloomington*, 852 N.W.2d 278, 281 (Minn. App. 2014).

combine classes, failing to provide adequate training on how to supervise class, and failing to create a curriculum that limited the risk of transitional activities. Konze also alleged that Kendrick and Wilson were negligent in combining their classes, allowing their students to play capture the flag, and failing to supervise the class. The school district moved for summary judgment, arguing that Konze's claims are barred based on statutory immunity, vicarious official immunity, and recreational-use immunity.[2]

The district court granted the school district's motion in part, concluding that the claims arising from the school district's conduct are barred by statutory immunity, and that the claims based on the teachers' decision to combine classes and choice of transitional activity are subject to official immunity. But the district court denied the school district's motion to dismiss Konze's negligent-supervision claim, concluding that the duty to provide adequate supervision is ministerial. The school district appeals.

### D E C I S I O N

On appeal from summary judgment, we determine whether there are genuine issues of material fact and whether the district court erred in applying the law. *Gleason v. Metro. Council Transit Operations*, 582 N.W.2d 216, 218-19 (Minn. 1998). We review the evidence de novo, in a light most favorable to the nonmoving party. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009).

Whether immunity applies is a legal question, which we also review de novo. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn. 1996). The party asserting immunity has the

---

[2] Marosok also moved for summary judgment. The district court granted his motion, and Konze does not challenge that judgment on appeal.

burden of demonstrating entitlement to that defense. *Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn. 1997).

Vicarious official immunity protects a municipality from suit based on the official immunity of its employees. *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 663-64 (Minn. 2004). Accordingly, we must first determine whether Kendrick and Wilson are entitled to official immunity before examining whether immunity also extends to the school district. *Fear v. Indep. Sch. Dist. 911*, 634 N.W.2d 204, 216 (Minn. App. 2001), *review denied* (Minn. Dec. 11, 2001). Official immunity is meant to protect public officials "from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Anderson*, 678 N.W.2d at 655 (quotation omitted). But official immunity does not extend to officials charged with executing ministerial, rather than discretionary functions. *Id.* Ministerial functions are "absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006) (quotation omitted). We look to "the precise governmental conduct at issue" in determining whether official immunity applies. *Gleason*, 582 N.W.2d at 219 (quotation omitted).

Konze's negligent-supervision claim is based on the conduct of the two physical-education teachers. At issue is whether the claim implicates the decision *to* supervise or the decision *how* to supervise. As the school district concedes, the decision *to* supervise students is absolute, and not immune from liability. But decisions about *how* to supervise students are inherently discretionary because they demand that teachers exercise their

4

professional judgment in response to ever-changing classroom circumstances. *See Weiderholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998) (holding discretionary decisions involve "individual professional judgment that necessarily reflects the professional goal and factors of a situation"). We turn to Konze's allegations and the record with this distinction in mind.

Examination of Konze's allegations reveals that they are premised on how the teachers chose to supervise the students. The complaint alleges, upon information and belief, that the teachers "did nothing" to supervise the game. But Konze subsequently clarified her allegations, asserting that the teachers "failed to provide any meaningful supervision" because they were not paying attention at the time Konze was injured. Konze specifically alleges that the teachers were standing just outside of the gymnasium and talking to each other at the time of the collision.

The undisputed facts are that Kendrick and Wilson decided to combine their classes and let their students play a game as a transitional activity on the day of the accident. They helped the students select the game and provided instruction on how it should be played, warning students to be attentive to their surroundings. The students used the entire gymnasium floor and the teachers stood together in a hallway just outside the gymnasium door during the game. Konze saw them talking from her position in the gymnasium just before the accident, and she assumed that they could see her. The teachers immediately responded to the accident, reaching Konze within seconds of the collision.

5

The record also shows that physical-education teachers at the high school have discretion regarding how to fulfill their mandatory duty to supervise. The school district does not have an official protocol that defines how teachers must supervise physical-education classes. Such a policy could have made the teachers' supervisory decisions ministerial. *See Anderson*, 678 N.W.2d at 659 (explaining sufficiently narrow policy or protocol governing conduct may create a ministerial duty). And the school district gives physical-education teachers the discretion to incorporate "transitional activities" into their classes. Kendrick testified that transitional activities do not need to be approved by the school district and teachers choose them based on their "experience."

Based on our review of Konze's allegations and the evidence, we conclude that the negligent-supervision claim implicates protected discretionary conduct. The discretion to select alternative activities implies that, in the absence of a defined supervision policy, teachers also have the discretion to choose how best to supervise those activities. *Cf. Fear*, 634 N.W.2d at 216 (finding no official immunity in absence of evidence that supervising teachers were responsible for making decisions regarding recess or playtime activities). And the active and dynamic nature of physical-education classes requires teachers to constantly exercise independent judgment regarding how best to supervise students. The complexity and fluidity of this supervisory environment stands in marked contrast to the "simple and definite" tasks facing a person charged with a ministerial duty. *Weiderholt*, 581 N.W.2d at 316 (quotation omitted). In sum, how Kendrick and Wilson chose to supervise class was a discretionary act that entitles them to official immunity.

Having determined that the teachers are entitled to official immunity, we turn to whether vicarious official immunity extends to the school district. Generally, if a public official is immune from suit, his or her government employer also enjoys immunity. *Anderson*, 678 N.W.2d at 663-64. The decision to grant vicarious official immunity is a policy question. *Olson v. Ramsey Cnty.*, 509 N.W.2d 368, 372 (Minn. 1993). It is well-recognized that vicarious official immunity is appropriate when failure to grant it would focus "stifling attention" on an official's performance "to the serious detriment of that performance." *Anderson*, 678 N.W.2d at 664 (quotations omitted).

The unpredictable nature of students and wide variety of activities included in physical-education curricula demand that teachers have the latitude to choose how to supervise without fear of second-guessing as to each individual supervisory decision. *See id.* (noting vicarious official immunity appropriate "where officials' performance would be hindered" by second-guessing in anticipation that government employer would also sustain liability). Indeed, the threat of legal liability for supervisory decisions could prompt conscientious physical-education teachers to unnecessarily limit their curricula to those activities with the lowest possible physical impact. *See S.L.D. v. Kranz*, 498 N.W.2d 47, 53 (Minn. App. 1993) (holding vicarious official immunity appropriate where "threat of litigation" and "attendant judicial scrutiny of . . . decisions" could detrimentally alter how public official carried out responsibilities). Such a response would be at odds with the school district's stated goals of encouraging fitness and regular physical activity, and is the type of counter-productive outcome vicarious official immunity exists to prevent.

Accordingly, we conclude that it is appropriate to extend vicarious official immunity to the school district based on the official immunity of Kendrick and Wilson. Having determined that the school district is entitled to vicarious official immunity, we need not address whether it is also entitled to recreational-use immunity.

**Reversed.**