**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1918**

MFK by and through her natural parent, Kathryn Kendrick,
Respondent,

vs.

Walker-Hackensack-Akeley ISD #113,
Appellant,

DOES 1-10,
Defendants.

**Filed August 5, 2024**
**Reversed**
**Reyes, Judge**

Cass County District Court
File No. 11-CV-23-205

Charles A. Sagert, Sand Law, PLLC, St. Paul, Minnesota (for respondent)

Jason M. Stoffel, Theodore J. Waldeck, Waldeck & Woodrow, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Reyes, Judge; and John Smith, Judge.*

**SYLLABUS**

A school district's softball coach is entitled to official immunity when the coach exercises significant, independent judgment and discretion over how to supervise a softball practice.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**OPINION**

**REYES**, Judge

Appellant-school district challenges the district court's denial of its motion for summary judgment because the school district asserts that it is entitled to (1) vicarious official immunity based on the discretionary acts of its coaches in supervising the softball practice at which the respondent-student was injured and (2) dismissal of the claims because respondent failed to provide the required notice under Minn. Stat. § 466.05 (2022). We reverse.

**FACTS**

The basic facts are not in dispute. In May 2017, respondent MFK, then nine years old and in third grade, participated in a softball practice organized by and held on the property of appellant Walker-Hackensack-Akeley ISD #113 (the school district) and supervised by its coaches. The practice involved at least two coaches who arranged at least two "stations," including a batting station, with players practicing at each station. While at the batting station, another player accidentally struck MFK in the forehead with a softball bat, and MFK sustained injuries, specifically, a permanent bump on her forehead.

CL was one of the coaches at practice that day. At the time of the accident, CL did "not know if another coach had eyes on the batting station," but was "satisfied that the coaches were adequately near the station, that the players were of the age and ability to do the batting activity without direct, eyes-on supervision at all times, and that in any moment[] when there was not direct eye[s]-on supervision of the batting station, that [she] or the other coaches could observe the station with a turn of the head." When a student

2

notified CL of the accident, she went to MFK, "administer[ed] a concussion protocol, appl[ied] ice, and call[ed MFK's] parents." CL also notified "community education administrators related to the incident." MFK's parents brought her home and did not seek immediate medical treatment, although MFK later saw a doctor.

Nearly six years later, on February 6, 2023, MFK, by and through her mother, Kathryn Kendrick, filed a two-count complaint against the school district and defendants "DOES 1-10," which included CL. The complaint alleged that MFK's injuries were directly and proximately caused by the DOES' negligence in supervising the softball practice and that the school district was liable under the doctrine of respondeat superior. MFK sought judgment against the school district and DOES for at least $50,000.

On June 26, 2023, the school district moved for summary judgment, arguing in part that MFK's claims were barred by her failure to give the school district notice under Minn. Stat. § 466.05 and that, even if she had, the school district was entitled to vicarious official immunity. With her memorandum opposing summary judgment, MFK relied upon an opinion of another softball coach to argue that CL and other coaches should have supervised the softball practice differently. The district court denied summary judgment after determining that the school district had actual notice of the claim to satisfy Minn. Stat. § 466.05 and that the manner by which coaches conduct a softball practice involves ministerial duties not protected by official immunity.

This appeal follows.

3

**ISSUE**

Is the school district entitled to vicarious official immunity?

**ANALYSIS**

The school district argues that the district court erred by denying its motion for summary judgment because it is entitled to (1) vicarious official immunity based, in part, on its coaches engaging in discretionary duties that were protected by official immunity and (2) dismissal as a matter of law because MFK failed to provide notice of her claim as required by Minn. Stat. § 466.05, subd. 1, which prejudiced the school district. Because we agree with the school district on the first issue, we need not reach the second.

"An appeal may be taken to [this court] . . . from such . . . orders or decisions as may be appealable by statute or under the decisions of the Minnesota appellate courts." Minn. R. Civ. App. P. 103.03(j). "While denial of a motion for summary judgment is not ordinarily appealable, an exception to this rule exists when the denial of summary judgment is based on rejection of a statutory or official immunity defense." *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004). Appellate courts review the denial of immunity on summary judgment to "determine whether there are genuine issues of material fact and whether the district court erred in applying the law." *Schroeder v. St. Louis County*, 708 N.W.2d 497, 503 (Minn. 2006). Whether immunity applies to particular facts is a question of law that appellate courts review de novo. *Id.* "The party asserting an immunity defense has the burden of demonstrating facts showing that it is entitled to immunity," and appellate courts "presume[] the truth of the facts alleged

4

by the nonmoving party." *Fear v. Indep. Sch. Dist. 911*, 634 N.W.2d 204, 209 (Minn. App. 2001), *rev. denied* (Minn. Dec. 11, 2001).

The school district argues that it is entitled to vicarious official immunity because (1) CL exercised professional judgment and discretion by determining a level of adequate supervision of the softball practice and MFK's reliance on the opinion of another softball coach does not defeat the school district's immunity defense and (2) policy considerations support extending vicarious official immunity to the school district.

Generally, "[e]very municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties." Minn. Stat. § 466.02 (2022). However, several exceptions apply, including vicarious official immunity. Whether the school district is entitled to vicarious official immunity depends, in addition to policy considerations, upon whether CL is entitled to official immunity. *Sletten v. Ramsey County*, 675 N.W.2d 291, 300, 303-04 (Minn. 2004). "The official immunity doctrine provides that a public official charged by law with duties which call for the exercise of [their] judgment or discretion is not personally liable to an individual for damages unless [they are] guilty of a willful or malicious wrong." *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn. 1988) (quotation omitted). Its purpose is to protect "public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Id.* at 678. Official immunity provides immunity from both liability and suit. *Sletten*, 675 N.W.2d at 299.

## I. CL is entitled to official immunity as a matter of law.

The school district argues that CL's conduct is protected by official immunity because she engaged in discretionary duties that required independent judgment. We agree.

To determine whether official immunity applies, courts must consider: "(1) the conduct at issue; (2) whether the conduct is discretionary or ministerial and, if ministerial, whether any ministerial duties were violated; and (3) if discretionary, whether the conduct was willful or malicious." *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014). Only discretionary duties are immunized, and whether a person's conduct warrants immunity depends on the facts of each case and the nature of the act. *Nisbet v. Hennepin County*, 548 N.W.2d 314, 317 (Minn. App. 1996).

### A. Conduct at Issue

"The starting point for analysis of an immunity question is identification of the precise governmental conduct at issue." *Gleason v. Metro. Council Transit Operations*, 582 N.W.2d 216, 219 (Minn. 1998) (quotation omitted). The school district frames the conduct as "[CL's] decision related to the level of supervision that was appropriate for the batting station" and asserts that "the decision related to how to supervise the softball practice." MFK frames it more generally as CL's "duty to supervise the children." The district court focused on CL's *manner* of supervising the softball practice, which is consistent with the school district's focus on *how* CL supervised the softball practice. We conclude that the "specific conduct at issue" here is how CL supervised, or in other words, CL's manner of supervising, the softball practice. *See Majeski*, 842 N.W.2d at 462.

6

## B.       Discretionary or Ministerial

The distinction between a discretionary and ministerial duty is "a nebulous and difficult one." *Shariss v. City of Bloomington*, 852 N.W.2d 278, 281 (Minn. App. 2014) (quotation omitted). A discretionary duty is one that "involves more individual professional judgment that necessarily reflects the professional goal and factors of a situation." *Schroeder*, 708 N.W.2d at 506 (quotation omitted). However, "the mere existence of some degree of judgment or discretion will not necessarily confer common[-]law official immunity." *Anderson*, 678 N.W.2d at 656.

"Official immunity requires the discretion to be exercised . . . [as] something more than the performance of merely 'ministerial' duties." *Fear*, 634 N.W.2d at 215. "Official immunity typically protects the conduct of public officials responding to uncertain circumstances that require the weighing of competing values [because] these circumstances offer little time for reflection and often involve incomplete and confusing information such that the situation requires the exercise of significant, independent judgment and discretion." *Shariss*, 852 N.W.2d at 282 (quotations omitted); *see also, e.g.*, *Schroeder*, 708 N.W.2d at 506 (determining road grader's decision to grade against traffic was discretionary because they acted "according to an established [county] policy that . . . gave [grader] the discretion to decide, in the field, whether to operate against traffic"); *Pletan v. Gaines*, 494 N.W.2d 38, 41 (Minn. 1992) (concluding that police officer was entitled to official immunity for decision to engage in car chase, which involved weighing many factors to exercise "significant, independent judgment and discretion"); *Majeski*, 842 N.W.2d at 463-64 (holding that police officer's decision to proceed through intersection at high speed with

squad car's lights on but sirens off was discretionary); *Kari v. City of Maplewood*, 582 N.W.2d 921, 925 (Minn. 1998) (holding that paramedic's driving in response to emergency was discretionary); *Watson ex rel. Hanson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 415 (Minn. 1996) (holding that bus driver's decision not to stop bus when gang members assaulted and threatened to kill passengers was discretionary).

Ministerial duties are those that are "absolute, certain[,] and imperative, involving merely the execution of a specific duty arising from fixed and designated facts," *Nisbet*, 548 N.W.2d at 317, and that lack a need or desire for "independent action," *Anderson*, 678 N.W.2d at 655. *See, e.g.*, *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998) (holding that sidewalk inspector lacked official immunity when duty requiring immediate repair of sidewalk was set by city ordinance). "It is inherent in the concept of ministerial duty that the duty must dictate the scope of the employee's conduct." *Anderson*, 678 N.W.2d at 659. A claim regarding a failure to fulfill a ministerial duty or negligent performance of that duty is not protected by common-law official immunity. *Id.* at 662.

We conclude that CL's manner of supervision of the softball practice was discretionary for purposes of official immunity because CL exercised "significant, independent judgment and discretion" over *how* she supervised the softball practice.[1] *Shariss*, 852 N.W.2d at 282 (emphasis and quotation omitted). CL's affidavit, which the school district submitted in its motion for summary judgment and is not disputed, states

---

[1] Due to the length of time that had elapsed between MFK's injury and her lawsuit against the school district, the school district could not locate or verify the past existence of any district policies governing softball practices.

8

that "[w]hen coaching multiple players, it is possible to properly supervise the team while not having eyes on every player at every moment," and that "[p]ractice stations are set up so that all players can be observed with a turn of the head," which is "a common arrangement when coaching youth sports." CL's affidavit states that, "in the moments leading up to the accident," and based on the placement of the coaches and the age and ability of the players, she was satisfied with the level of supervision of the batting station. CL's supervision was not "merely the execution of a specific duty arising from fixed and designated facts," *Nisbet*, 548 N.W.2d at 317, but rather involved "uncertain circumstances that require[d] the weighing of competing values" and the exercise of "significant, independent judgment and discretion." *Shariss*, 852 N.W.2d at 282 (quotation omitted).[2]

We also conclude that the facts of this case require a different outcome than that in *Fear*, upon which MFK relies in her brief. 634 N.W.2d 204. In *Fear*, this court concluded that, while school-district employees responsible for supervising students at recess exercised some discretion by deciding what students would be permitted to do, that alone did not guarantee official immunity when there was no evidence to show that they made discretionary decisions on those matters. *Id.* at 215-16. Here, unlike in *Fear*, the school

---

[2] Although MFK relies on *Larson ex rel. Larson v. Indep. Sch. Dist. No. 314*, 289 N.W.2d 112 (Minn. 1979) and *Williamson v. Cain*, 245 N.W.2d 242 (1976) to argue that CL's conduct here was ministerial, we are not persuaded. In *Larson*, the supreme court classified a gym teacher's method for teaching a gymnastics maneuver that students were required to learn as a ministerial duty. 289 N.W.2d at 120. However, the supreme court has since indicated that its analysis in *Larson* incorrectly conflated statutory-immunity standards with an official-immunity analysis, and it is unclear whether *Larson* is still good law. *Anderson*, 678 N.W.2d at 656-57, 661. As to *Williamson*, in which the supreme court classified the demolition of a house as ministerial, that case includes only a conclusive analysis that is not helpful to analyzing the facts here. 245 N.W.2d at 244.

9

district provided CL's affidavit that described how CL exercised her discretion by deciding where to locate practice stations and how many to set up, how many players to have at each station based on their age and ability, and where to locate the coaches so they could provide sufficient supervision for the softball practice.

Further, the other coach's opinion submitted by MFK provides additional support for our conclusion that CL exercised a discretionary duty here. The coach's opinion addresses *how* CL should have run the softball practice and *how* the coach had run similar practices in the past. However, the coach does not cite to fixed rules or policies governing the supervision of softball practices, and MFK has not presented any other evidence of a required protocol or policy that could have conferred a ministerial duty on CL. *Contra Anderson*, 678 N.W.2d at 657 (noting that woodshop instructor's direction to student to make saw cuts in certain way was ministerial from instructor's perspective, because it was dictated by established protocol that deprived instructor of discretion). We conclude that the specific conduct at issue here was discretionary.

### C. Willful or Malicious

MFK has not alleged that CL willfully or maliciously committed the conduct at issue. Because we conclude that CL engaged in discretionary conduct, CL is entitled to official immunity.

## II. The school district is entitled to vicarious official immunity.

The school district next argues that, because CL is entitled to official immunity and policy considerations support extending immunity to the school district, it is vicariously immune from liability. The school district's argument has merit.

10

"Generally, if a public official is found to be immune from suit on a particular issue, his or her government employer will be vicariously immune from a suit arising from the employee's conduct and claims against the employer are dismissed without explanation." *Anderson*, 678 N.W.2d at 663-64 (citing *Pletan*, 494 N.W.2d at 42). However, a government employer is not entitled to vicarious official immunity in all cases, and "whether to extend vicarious official immunity to a government employer remains a policy question." *Id.* at 664. Courts apply vicarious official immunity "when failure to grant it would focus 'stifling attention' on an official's performance 'to the serious detriment of that performance.'" *Id.* (quoting *Olson v. Ramsey County*, 509 N.W.2d 368, 372 (Minn. 1993)).

Policy considerations support that the school district is entitled to vicarious official immunity here. The very nature of a sports practice, especially one involving more minor children than the number of supervising adults, requires a near-constant exercise of "significant, independent judgment and discretion." *Shariss*, 852 N.W.2d at 282 (quotation omitted). Failure to extend the doctrine of official immunity under these circumstances would place "stifling attention" on the role of coaches, which in turn would disincentivize persons from holding those positions. *See Anderson*, 678 N.W.2d at 664-65 (concluding that school district was entitled to vicarious official immunity "because to rule otherwise would create a disincentive to use collective wisdom to create [] protocols and policies," which would result in stifling attention on teachers); *Olson*, 509 N.W.2d at 372 (holding county entitled to vicarious official immunity when granting immunity to social worker while denying it to county would put "stifling attention on the social worker's performance,

11

to the serious detriment of that performance"). Such an impact would be significant, as so many coaching positions are filled not only by school employees, but also by volunteers and parents. As such, we conclude that the school district is entitled to vicarious official immunity.

## DECISION

We conclude that a school district's softball coach is entitled to official immunity when the coach exercises significant, independent judgment and discretion over how to supervise a softball practice. Because we also conclude that vicarious official immunity should be extended to the school district under these circumstances, we reverse.

**Reversed.**